1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ALEJANDRO MENDOZA, an individual,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;CITY OF NATIONAL CITY; THOMAS MALANDRIS; BENJAMIN PECK; and MICHAEL NUTTALL,<br><br>　　　　　　　　　　Defendant. | Case No.:  15cv1528-JAH (BGS)<br><br>**ORDER (1) GRANTING DEFENDANT USA'S MOTIONS FOR SUMMARY JUDGMENT [DOC. NOS. 43, 62]; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT NATIONAL CITY'S MOTIONS FOR SUMMARY JUDGMENT [DOC. NOS. 48, 65]** |

## **INTRODUCTION**

Presently before the Court are four motions for summary adjudication filed by the Defendants. See Doc. Nos. 43, 48, 62, 65. Upon review of each motion, the Court notes that arguments made in Defendant USA's ("USA") and Defendant City of National City's ("National City") earlier filed motions, [doc. nos. 43, 48], are both responsive to Plaintiff Ali Alejandro Mendoza's ("Plaintiff" or "Mendoza") First Amended Complaint ("FAC"), are duplicated and made part of their, respective, later filed motions, responsive to Plaintiff's Second Amended Complaint ("SAC"). See Doc. Nos. 43, 48; cf Doc. Nos. 62, 65. Accordingly, this order consolidates duplicative arguments and notes where the Court's

1

findings apply to more than one motion. The record indicates that Plaintiff, USA, and National City, fully briefed the later filed motions, [doc. nos. 62, 65]. See Doc. Nos. 74, 76, 78, 79. After careful consideration of the record, including the pleadings and exhibits submitted by the parties, after entertaining oral argument from counsel, and for the reasons set forth below, Defendant USA's motions, [doc. nos. 43, 62], are **GRANTED** in their entirety; and Defendant National City's motions, [doc. nos. 48, 65], are **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

## BACKGROUND

### 1.    Factual Background

On July 12, 2014, Officer Thomas Malandris ("Malandris") was traveling on a residential street, driving approximately 20-25 miles per hour. Malandris Depo., at 93:7-14. At about 9:00 p.m., Plaintiff Ali Alejandro Mendoza ("Plaintiff" or "Mendoza"), a 19-year-old male, and his friend Alberto Morales attempted to cross the two lane intersection within a marked crosswalk. Plaintiff saw Malandris' car approaching from about a block away, but believed they would be able to cross the intersection before the car reached them. Mendoza Depo., at 83:9-19, 88:13-23. As they crossed the street, Plaintiff looked over and saw that the vehicle was going to collide with them. Id.at 90:11-22. Plaintiff pushed his friend out of the way, was struck by the vehicle, and rolled into the windshield. Id. Plaintiff testified that he began to get up after the collision, raising himself up to his hands and knees. Mendoza Depo. at 111:21-25; 112:8-10 ("After I landed . . . I try to maneuver my hands to try to lift myself up from how I was laying. And I pretty much lift myself just pretty much to where I'm on my hands and knees . . . I tried to – I attempted to get up, but I can't. My body was incredibly weak, so I just stay on my hands and knees"); see also Morales Depo. at 54:14-23 (testifying that Plaintiff was "trying to find a way to get up.").

Malandris moved Plaintiff to a safe position on the curb and then Malandris moved his vehicle out of the middle of the street. Malandris Depo. at 168:3-169:4.

Shortly thereafter, Sergeant Leach with the National City Police arrived at the scene, called for an ambulance and initiated a traffic collision investigation. Id. at 181:4-12.

2

National City Police Officer Michael Nuttall was placed in charge of the collision investigation and he completed a traffic collision report. Nuttall Decl., at ¶ 4. National City Police Officer Benjamin Peck completed the portion of the traffic collision report relating to Plaintiff. Id. at ¶ 6.

Officer Peck went to the hospital after the collision to interview Plaintiff. Hospital staff alerted Peck to a marijuana pipe that was found in Plaintiff's possession. In responding to a question from Peck, Plaintiff admitted to smoking marijuana earlier that day. Peck Depo., at 63:4-14; 66:16-19.) Peck claims that he obtained knowing and voluntary consent from Plaintiff for a blood draw, but the blood was never tested for marijuana. Id. at 12:11-18; 13:3-7; 13:20-14:12; 48:9-15; 52:2-3. However, a separate urine test performed by the hospital returned a positive result for Tetrahydrocannabinol (THC). Ex. G, USA 408; USA 503.) Plaintiff also admitted during his deposition to inhaling five puffs from a water pipe (bong) earlier that day. Mendoza Depo., at 50:19-51:20.

Plaintiff suffered a single fracture of his right tibia. He underwent surgery to place a rod (nail) and screws in his leg. He later underwent a second surgery to remove the screws. Plaintiff reported relatively low pain throughout his treatment and was released from care approximately one year after the collision, on July 17, 2015, with no restrictions on his activities.

## 2.    Procedural History

Plaintiff's complaint was originally filed in state court. On June 5, 2015, the case was removed to this Court. See Case No. 15cv1260-JAH (BGS). On July 7, 2015, the parties jointly moved to dismiss the entire action without prejudice. The motion was granted on July 9, 2015.

On July 10, 2015, Plaintiff filed a new suit for damages,[1] asserting a claim for Negligence against Defendants USA and National City only. See Doc. No. 1. Proof of

---

[1] This refiled case was assigned Case No. 15cv1528-W (BLM), but was reassigned to this Court and renumbered Case No. 15cv1528-JAH (BGS). See Doc. No. 14.

service as to both Defendants was filed on July 23, 2015. <u>See</u> Doc. Nos. 3, 4. Defendant National City answered the Complaint on July 31, 2015, and Defendant USA answered on September 8, 2015. <u>See</u> Doc. Nos. 7, 11.

On February 24, 2016, Plaintiff moved this Court for leave to file a First Amended Complaint ("FAC"). <u>See</u> Doc. No. 22. The motion was granted on April 19, 2016, and Plaintiff timely filed his FAC on April 29, 2016. <u>See</u> Doc. Nos. 37, 38. The FAC joined Defendants Malandris, Peck, and Nuttal, and asserted seven causes of action: (1) Negligence; (2) violations of Cal. Civ. Code §§ 51, 52, 52.1, the Bane Act; (3) violations of 42 U.S.C. § 1983; (4) violations of 42 U.S.C. §§ 1985(2)-(3); (5) violations of § 42 U.S.C. § 1986; (6) Intentional Infliction of Emotional Distress (IIED); and (7) violations of federal civil rights, under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). <u>See</u> Doc. No. 38.

On May 9, 2016, the USA filed a notice, substituting the USA in place of Malandris, with respect to common law tort claims alleged against Malandris, arising from Malandris' acts or omissions occurring on or after July 12, 2014. <u>See</u> Doc. No. 41 (citing 28 U.S.C. § 1346(b), 2671-2680, the Federal Tort Claims Act ("FTCA"), as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988 § 5, Pub. L. No. 100-694. 102 Stat. 4563 (1988)). On the same day, May 9, 2016, the USA also filed a motion for partial summary judgment and judgment on the pleadings, as to the FAC. <u>See</u> Doc. Nos. 43. Similarly, on May 13, 2016, Defendant National City filed its motion for summary judgment and partial summary judgment, as to the FAC. <u>See</u> Doc. Nos. 48. Neither motion was fully briefed.

On May 31, 2016, Plaintiff filed the instant Second Amended Complaint ("SAC"), asserting seven causes of action against Defendants USA, National City, Malandris, Peck, and Nuttal, for (1) Negligence; (2) violations of Cal. Civ. Code §§ 51, 52, 52.1, the Bane

Act; (3) violations of 42 U.S.C. § 1983; (4) violations of 42 U.S.C. §§ 1985(2)-(3); (5) violations of § 42 U.S.C. § 1986; (6) IIED; and (7) violations of federal civil rights, under Bivens. See Doc. No. 53.

On June 13, 2016, the USA filed a motion for partial summary judgment, judgment on the pleadings, or, in the alternative, for summary adjudication. See Doc. No. 62. On June 13, 2016, Defendants National City, Peck, and Nuttall (the "National City Defendants") joined in the motion. See Doc. No. 64. On December 15, 2016, Malandris also joined. See Doc. No. 110. Thus, all Defendants seek a partial summary judgment or summary judgment order, contending that (1) there was no joint agency or dual employment of Malandris; (2) National City cannot be liable through *respondeat superior* for Malandris' actions; and (3) Mendoza cannot show outrageous conduct or causation, requisite elements for his IIED claim. See Doc. No. 62 at 2. On July 18, 2016, Plaintiff filed a response in opposition. See Doc. No. 76. The USA replied on July 22, 2016. See Doc. No. 78.

Also on June 13, 2016 the National City Defendants filed a motion for summary judgment or partial summary judgment, as to the SAC. See Doc. No. 65. On December 15, 2016, USA and Malandris joined in the motion. See Doc. Nos. 108, 111. Thus, all Defendants seek a summary judgment or partial summary judgment order, contending that (1) there was no joint agency or dual employment of Malandris; (2) Nuttall and Peck cannot be liable for negligently and recklessly failing to properly investigate and document the subject collision; (3) there were no constitutional violations to support Mendoza's third, fourth, or fifth causes of action; (4) there is no constitutional right to a correct traffic collision report; (5) Peck did not violate any of Mendoza's constitutional rights when he interviewed Mendoza in the hospital, photographed his clothing and marijuana pipe, or obtained consent for a blood draw; and (6) no force or coercion was used against Mendoza during Peck's hospital interview. See Doc. No. 65-16. On July 18, 2016, Plaintiff filed a response in opposition. See Doc. No. 74. The National City Defendants replied on July 25, 2016. See Doc. No. 79.

On December 20, 2016, the Court entertained oral argument from counsel. <u>See</u> Doc. No. 113. The motions were taken under submission at the hearing. <u>Id</u>.

## DISCUSSION

### 1.   Summary Judgment Standard

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. <u>See</u> <u>Celotex</u>, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. <u>Id</u>. at 322-23. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." <u>Id</u>. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>United Steelworkers v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." <u>Lujan</u>, 497 U.S. at 885 (quoting <u>Celotex</u>, 477 U.S. at 323). "Disputes over irrelevant or unnecessary facts will not preclude

6

a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)) (internal quotations omitted).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

The Ninth Circuit has previously acknowledged that declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position. S.E.C. v. Phan, 500 F.3d 895, 909 (9th Cir. 2007) (holding that the district court erred in disregarding declarations as "uncorroborated and self-serving").

Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature. See id. However, a self-serving declaration that states only conclusions and uncorroborated facts would not generally be admissible evidence. See id.; see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1059 n. 5, 1061 (9th Cir. 2002) (holding that the district court properly disregarded the declaration that included facts beyond the declarant's personal knowledge and did not indicate how she knew the facts to be true); F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

**2.      Judgment on the Pleadings**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Judgment on the pleadings is proper when there is no unresolved issue of fact and no question remains that the moving party is entitled to a judgment as a matter of law. Honey v. Distlrath, 195 F.3d 531, 532-33 (9th Cir. 1999).

## ANALYSIS

**1.      Motion for Partial Summary Judgment, Judgment on the Pleadings, or, in the Alternative, Summary Adjudication by Defendants USA, National City, Nuttall, Peck, and Malandris**

On June 13, 2016, Defendant USA filed a motion for partial summary judgment and for judgment on the pleadings, or, in the alternative, summary adjudication pursuant to FRCP Rules 12(c) and 56, as to Mendoza's SAC. See Doc. No. 62. On the same day, the National City Defendants joined in this motion. See Doc. No. 64. On December 15, 2016, Malandris joined. See Doc. No. 110. Thus, all Defendants seek partial summary judgment or summary adjudication (1) on Mendoza's claim of dual liability against both the USA and the National City for the actions of Malandris; (2) that the sole employer of Malandris

was the USA, and that Malandris was not an employee of National City, nor can National City be held liable for Malandris' actions through *respondeat superior*; and (3) on Mendoza's IIED claim, for failure to show causation or outrageous conduct. <u>See</u> Doc. No. 62 at 2.[2] For the following reasons, Defendant USA's motions [doc. no. 43, 62] are hereby consolidated and **GRANTED** in their entirety.

**A.     Summary Judgment or Partial Summary Judgment as to Mendoza's Claim of Dual Liability Against both the United States and the City of National City for the Actions of Malandris**

Defendants contend that, at the time of the incident, Malandris was an employee of the USA, and not an employee of National City. <u>See</u> Doc. No. 65-16 at 10. Defendants acknowledge the existence of "an informal, non-documented, liaison arrangement between ICE and NCPD[,]" whereby the two law enforcement entities would "from time-to-time" work together to "effectuate the apprehension" of a suspect ICE or the NCPD was investigating. <u>See</u> <u>id</u>.; Doc. No. 65-5 at 8-9 (video-taped deposition of Malandris). Nevertheless, Defendants maintain that the USA was, and remained, the sole employer of Malandris. <u>Id</u>. The nature of this liaison arrangement is explored, primarily, via depositions of Malandris and John Garzon, Deputy Field Office Director for ICE/ERO (Enforcement and Removal Operations), who was involved in forming "the vision of what role Malandris would fill as liaison to the NCPD." Doc. No. 65-16 at 10. Ultimately, Defendants argue that record evidence so clearly demonstrates that the USA maintained control over Malandris—including how Malandris performed his duties generally, and during the night of the incident—that no genuine issue of material fact exists as to whether Malandris was employed by both Defendants USA and National City.

---

[2] Upon review of the motion, the Court notes that the USA duplicates the same arguments as those made in their previous motion for partial summary judgment, for judgment on the pleadings, or, in the alternative, summary adjudication, as to the FAC, filed on May 9, 2016. <u>See</u> Doc. No. 43; <u>cf</u>. Doc. No. 62.

In opposition, Mendoza responds that triable issues of fact exist as to whether Malandris was an agent for National City when he struck Mendoza with his vehicle. See Doc. No. 74 at 2. Particularly, Mendoza focuses on an alternative characterization of the undocumented liaison agreement, and that the triggering event which caused Malandris to be on the road where he struck Mendoza was a radio dispatch, on an NCPD frequency that Mendoza had access to, involving a suspect, allegedly wielding a knife, and breaking into a dwelling. Id. at 12-13. Mendoza argues that record evidence does not conclusively negate the possibility that an agency relationship between Malandris and National City existed. Id. Mendoza points to, *inter alia*, Malandris' response to the so-called "knife call," and the part of Malandris' deposition where Malandris describes he felt it was his *duty* to respond, to support Mendoza's conclusion that, under California law, this determination "is uniquely factual and *almost always* for the jury." Id. at 12 (emphasis in original) (citing Kowalski v. Shell Oil Company, 23 Cal. 3d 168, 175 (1979) ("if evidence permits conflicting inferences, special employment relationship is question of fact."); S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341, 349 (1989)).

In reply, Defendants maintain that despite plaintiff's "unsupported arguments to the contrary, there is no evidence before this court that Sgt. Leach or the NCPD, in general, had any supervisory duties toward, or any type of control, over Malandris, in any respect[.]" See Doc. No. 79 at 10. Ultimately, Defendants maintain that they should prevail on this issue because, under California law, National City's *right to control* what Malandris did or did not do is the central issue; and the record includes an absence of evidence showing that National City had any right to control Malandris, despite his decision to respond to the knife call. Id. at 8-9.

Drawing all inferences from the underlying facts in the light most favorable to Mendoza, the Court finds no genuine issue of material fact with respect to whether Malandris, at the time he struck Mendoza with his car, was the sole employee of the USA. Record evidence reflects that he was.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) *by presenting evidence that negates an essential element of the nonmoving party's case*, or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23 (emphasis added). Here, Defendants meet their Celotex burden via method one.

Scope of employment determinations are made "according to the principles of *respondeat superior* of the state in which the alleged tort occurred." Pelletier v. Fed. Home Loan Bank, 968 F.2d 865, 876 (9th Cir. 1992). Under California law, when an employer lends its employee to a borrowing or special employer, there are three possible results regarding *respondeat superior* liability: (1) only the original or general employer is liable; (2) only the borrowing employer is liable; and (3) both the general and the borrowing employers are liable.  See e.g. Dornan v. United States, 460 F.2d 425, 428 (9th Cir. 1972) ("the effect of the 'borrowed servant' relationship . . . is a question of California law.").

The general employer remains solely liable where it retains "ultimate control" of the employee. Dornan, 460 F.2d at 428 ("[a] general employer may lend an employee to do the work of a special (borrowing) employer, but so long as the employee is under the ultimate control of his general employer that employee remains the general employer's servant for the purpose of *respondeat superior* tort liability."). The borrowing or special employer becomes solely liable when the general employee transfers control over its employee to the borrowing employer. United States v. Sequel Contractors, Inc., 402 F. Supp. 2d 1142, 1155 (C.D. Cal. 2005) (explaining that where the borrowed employee was "directly controlled and supervised" by the borrowing employer, "the special employer becomes solely liable under the doctrine of *respondeat superior* for the employee's job-related torts.") (citation and quotation omitted); see also Denton v. Yazoo & M.V.R. Co., 284 U.S. 305, 308 (1931) ("When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in

11

respect of his acts in that service is to be dealt with as the servant of the latter and not the former."). "[I]mposition of liability upon the special employer flows from the borrower's power to supervise the details of the employee's work. <u>Wilson v. County of San Diego</u>, 91 Cal. App. 4th 974, 984 (2001) (quotation omitted). The general employer and the special employer are both liable for the acts of the employee only when they share control over the employee. <u>State ex. Rel. Dep't of California Highway Patrol v. Super. Ct.</u>, 60 Cal. 4th 1002, 1008 (2015). The primary factor for determining if a special employment relationship exists, creating sole or dual liability against the borrowing employer, is "whether the special employer has the right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not[.]" <u>Kowalski</u>, 23 Cal. 3d at 175 (quotation omitted); <u>see</u> <u>also</u> <u>Standard Oil Co. v. Anderson</u>, 212 U.S. 215, 222 (1909) (explaining that to answer the question of which employer is liable for the acts of the employee, this Court must answer "who has the power to control and direct the servants in the performance of their work.").

In California, courts consider—

> (1) whether the borrowing employer's control over the employee and the work he is performing extends beyond mere suggestion of details or cooperation; (2) whether the employee is performing the special employer's work; (3) whether there was an agreement, understanding, or meeting of the minds between the original and special employer; (4) whether the employee acquiesced in the new work situation; (5) whether the original employer terminated [its] relationship with the employee; (6) whether the special employer furnished the tools and place for performance; (7) whether the new employment was over a considerable length of time; (8) whether the borrowing employer had the obligation to pay the employee.

<u>Caso v. Nimrod Prods., Inc.</u>, 163 Cal. App. 4th 881, 889 (2008) (citation omitted). Last, other factors have been found to negate the existence of a special employment relationship, including: "[t]he employee is (1) not paid by and cannot be discharged by the borrower, (2) a skilled worker with substantial control over operational details, (3) not engaged in the

borrower's usual business, (4) employed for only a brief period of time, and (5) using tools and equipment by the lending employer." Id. (citation omitted).

The Court finds the depositions of John Garzon, Deputy Field Officer of ICE/ERO, and Malandris dispositive of this issue, despite there being no express agreement or MOU outlining the liaison program. Carmen, 237 F.3d at 1030 ("The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein."). First, Garzon, who had a role in shaping the vision of the ICE/NCPD liaison program, describes the program as a pilot. See Doc. No. 65-4 at 5. During his deposition, Garzon recounted that "one of the biggest things that I wanted to see done was to identify if there's work there [referring, geographically, to National City] for ICE. Is there a large enough group of priority targets that we would, you know, post a resources [sic] there, assign someone there permanently? That was the main thing I wanted to see." Id. Garzon continues, "[a]nd that was my objective, to find out if we put someone down there, if they say there's lots of priority targets here or there's not, then I would determine if we should leave somebody there or not. And to some extent, that's the way it still is." Id. This testimony tends to show that the liaison program was in its infancy, and that the intended relationship was a cooperative one, between ICE and NCPD, to explore whether there was an opportunity for ICE to expand its focus of targeting non-United States citizen aliens who engage or alleged to engage in dangerous crime, including gang affiliation, rape, murder, crimes of violence, weapons crimes in the National City area. Id. at 10-11.

Furthermore, Garzon's testimony confirms that the following equipment was supplied to Malandris by ICE: his car, gasoline, gun, and badge. Id. at 7-9. Malandris corroborates the same in his deposition. See Doc. No. 65-5 at 6-9. ICE also paid Malandris' salary, determined overtime pay, and paid medical benefits. Doc. No. 65-4 at 7-9. Garzon identified Malandris' direct supervisor as Rick Abend, employed by ICE. Id. ICE is also, according to Garzon, the Agency tasked with disciplining Malandris, including for events like the vehicle accident underlying the case at bar. Id. Garzon was unsure whether NCPD

13

specified a time when Malandris could do liaison work, and was not sure if Malandris was allowed to respond to non-liaison calls; however, Garzon confirmed that the vision for the relationship with NCPD was not intended to create an employment relationship. <u>Id</u>. at 7-10. There is no indication on the record that NCPD controlled Malandris. Even though Malandris testifies that, as a liaison to NCPD, he had a passkey to enter NCPD headquarters, his access was limited, and he did not report to anyone there. Doc. No. 65-5. Instead, Malandris explains that he would, from time-to-time, work with NCPD officers to apprehend suspects, and *vise versa*. <u>Id</u>. at 8. Malandris' understanding of his role was to work together to create a common goal of "assisting each other." <u>Id</u>. at 9.

In light of the foregoing, the Court finds that Defendants satisfied their initial burden. <u>Celotex</u>, 477 U.S. at 323. Moreover, the sworn testimony of Garzon and Malandris negates an essential element of Mendoza's case, with respect to the existence of dual employment. <u>Caso</u>, 163 Cal. App. 4th at 889. Accordingly the Court finds that (1) on the night of the incident, July 12, 2014, the USA was the sole employer of Malandris; and (2) *respondeat superior* liability, as to National City, can only arise from the conduct of its employees, Officers Nuttall and Peck, and not the conduct of Malandris. The Court also finds that Plaintiff has not met its burden of presenting a genuine issue of material fact to present to the trier of fact. Defendants' motion for summary judgment, on this issue, is **GRANTED**.

### B. Summary Judgment or Partial Summary Judgment as to Mendoza's Sixth Cause of Action for IIED

Next, Defendants move for summary judgment, or partial summary judgment, with respect to Plaintiff's IIED claim. <u>See</u> Doc. No. 62-1 at 20-21.

The elements of an IIED cause of action are "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." <u>Molko v. Holy Spirit Assn.</u>, 46 Cal.3d 1092, 1120, (1988), *superseded by statute on other grounds as stated in* <u>Molko v. Holy Spirit Assn.</u>, 46 Cal.3d 1092 (1988); <u>see also</u> <u>Christensen v. Superior Court</u>, 54 Cal.3d 868, 903 (1991) (en banc).

14

"Conduct is extreme and outrageous when it 'exceeds all bounds [of decency] usually tolerated by a decent society, [and is] of a nature which is especially calculated to cause, and does cause, mental distress[.]'" Id. at 1122 (quoting Cole v. Fair Oaks Fire Prot. Dist., 43 Cal.3d 148, 155, n.7 (1987)). "Behavior may be considered outrageous if a defendant . . . abuses a relation[ship] or position which gives him power to damage the plaintiff's interest[.]" Molko, 46 Cal.3d at 1122. Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous. Berkley v. Dowds, 152 Cal.App.4th 518, 534 (2007). The alleged conduct must not only be intentional and outrageous, *but must also be directed at plaintiff*, or occur in the presence of a plaintiff of whom defendant is aware. Christensen, 54 Cal.3d at 903 (emphasis added).

Indeed, the crux of this issue is outrageous conduct—specifically, whether Malandris' conduct at the scene of the accident exceeded all bounds of decency usually tolerated by a decent society, and is of a nature which is especially calculated to cause mental distress, and if so, whether the same proximately caused the emotional distress alleged. Molko, 46 Cal.3d at 1122.

Defendants contend that, as a matter law, Plaintiff does not show, and cannot show, causation or outrageous conduct. Id. In addition, relying heavily on Carlsen v. Koivumaki, 227 Cal.App. 4th 879, 897 (2014), Defendants argue that summary adjudication is proper because Plaintiff cannot prove causation where he cannot remember the alleged conduct. Doc. Nos. 62-1 at 20-21, 78 at 3. In Carlsen, plaintiff was severely injured after falling from a cliff above the Sacramento River. Carlsen, 227 Cal.App.4th at 882. Afterward, Plaintiff could not recall how or why he fell. Id. at 882-883. Nevertheless, plaintiff sued his two companions for, *inter alia*, IIED. Id. Plaintiff claimed that defendants placed him in peril by bringing him to the edge of the cliff, knowing he was highly intoxicated, which caused the fall. Id. Plaintiff additionally alleged that defendants aggravated his injuries because they waited several hours to report the accident. Id. at 883.

In opposition, Plaintiff argues that, unlike <u>Carlsen</u>, where the plaintiff had absolutely no recollection of even being at the site of the accident, Mendoza vaguely recalls the accident and a short period after. <u>See</u> Doc. No. 76-9. Likewise, the plaintiff in <u>Carlsen</u> voluntarily drank to the point of obvious intoxication, in which alcohol presumably was a factor in plaintiff's subsequent memory loss, along with his fall. Mendoza argues that his case is distinct because his partial memory loss arose, involuntarily, from the impact with Malandris' vehicle, and subsequent treatment of his injuries—which included morphine. <u>Id</u>. Moreover, Plaintiff argues that Defendants' motion must fail because a reasonable trier of fact could conclude that Malandris showed a reckless disregard for the probability of causing Plaintiff emotional distress when he moved him to the curb after he was hit. Doc. Nos. 76 at 10-11; 76-9 at 112:11-19. Plaintiff's expert, Jeffrey J. Noble, states Malandris' act of moving Plaintiff was contrary to how police officers are trained because moving someone may aggravate the person's injuries. Doc. No. 76-11 at 32. Ultimately, Plaintiff contends that a reasonable trier of fact could find Malandris' actions, considered in light of all the surrounding circumstances, to be outrageous. Doc. No. 76 at 11-12.

In reply, Defendants maintain that, as a matter of law, Plaintiff's IIED claim fails. <u>See</u> Doc. No. 78 at 3. With respect to extreme and outrageous conduct, Defendants remind the Court that, in evaluating whether conduct is sufficiently outrageous, "it is 'not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" <u>Id</u>. (citing <u>Cochran v. Cochran</u>, 65 Cal.App. 4th 488, 496 (1998) (quotation omitted)). With respect to causation, Defendants maintain that "[f]rom the facts alleged in the SAC, it is clear that Plaintiff's allegations of extreme and outrageous conduct relate to actions that Defendants allegedly took outside of Plaintiff's presence, or of which Plaintiff has no memory." <u>Id</u>. Therefore, Defendants conclude, "no reasonable fact finder could conclude that Plaintiff's alleged emotional distress was caused by Defendant's conduct." <u>Id</u>.

16

1  Drawing all inferences from the underlying facts in the light most favorable to

2  Plaintiff, the Court finds that there is no genuine issue of material fact with respect to

3  whether a reasonable trier of fact could find that Malandris' conduct at the scene of the

4  accident—i.e. moving Menodza's body to the to the curb after he was struck—rises to the

5  level of "outrage," a necessary element for IIED claim in California. <u>Anderson</u>, 477 U.S.

6  at 248. Indeed, the Court finds that reasonable persons would not differ; they would agree

7  that Malandris' conduct did not rise to the requisite level of outrage. <u>Berkley</u>, 152

8  Cal.App.4th at 534. The record reflects that after striking Mendoza, and before any other

9  first responders arrived, Malandris moved Mendoza, "by his armpits," to the east curb (the

10  cub farthest away from where Plaintiff had been hit), and then, "Malandris moved his car."

11  Doc. No. 74 at 8. Plaintiff's papers describe the method Malandris used to move Plaintiff

12  to the curb by dragging him, while severely injured. <u>Id</u>. As a matter of law, this is not

13  enough. <u>Cole</u>, 43 Cal.3d at 155, n.7. The Court finds that Defendants satisfy their initial

14  burden by presenting evidence that negates an essential element of the nonmoving party's

15  case, and by demonstrating that the nonmoving party failed to make a showing sufficient

16  to establish an element essential to that party's case on which that party will bear the burden

17  of proof at trial. <u>Celotex</u>, 477 U.S. at 322-23. Malandris' conduct of removing Plaintiff

18  from the roadway was not extreme and outrageous.

19  Furthermore, although courts have ruled that a jury could not reasonably conclude

20  that a plaintiff suffered mental distress caused by defendant when plaintiff has no memory

21  of the defendant's conduct, <u>see e.g.</u> <u>Carlsen</u>, 227 Cal.App.4th at 897, this Court, drawing

22  all inferences in the light most favorable to Plaintiff, must agree with Plaintiff that he does

23  maintain at least some memory of what occurred that day. <u>See</u> Doc. No. 74, Exhibit G,

24  Mendoza Depo., 132:7-10 (although Plaintiff was impaired by his injuries and medication,

25  Plaintiff testifies that he partially remembers events from that day, including having his

26  blood drawn). Mendoza's case is, therefore, sufficiently distinct.

27  Moreover, in the SAC, Mendoza alleges that his emotional distress was caused by

28  alleged conspiracy and cover-up by Defendants Malandris, Nuttall, and Peck. <u>See</u> Doc. No.

17

53 at ¶ 12. Assuming *arguendo* the object of the conspiracy is the alleged cover up or to absolve Malandris of fault, the record reflects that the elements of a conspiracy cannot be shown. Indeed, Malandris, who the alleged conspiracy was intended to protect (according to Mendoza), was contemporaneously found at fault for hitting Mendoza with his car, as evidenced by the report produced by Nuttall (one of the alleged co-conspirators). See Doc. No. 53 at 5-10. Therefore, the alleged conspiracy could not have been the proximate cause of Mendoza's alleged emotional distress. Christensen, 54 Cal.3d at 903.

In light of the foregoing, the Court finds that Defendants satisfied their initial burden. Celotex, 477 U.S. at 323. Accordingly the Court finds that there is no genuine issue of material fact with respect to whether Malandris' conduct at the scene of the accident exceeded all bounds of decency usually tolerated by a decent society, and is of a nature which is especially calculated to cause, and does cause, mental distress liability. Molko, 46 Cal.3d at 1122. Defendants' motion for summary judgment, on this issue, is **GRANTED**.

## 2. Motion for Summary Judgment or Partial Summary Judgment by Defendants National City, Nuttall, Peck, USA, and Malandris

On June 13, 2016 Defendants National City, Peck, and Nuttall filed a motion for summary judgment or partial summary judgment, as to Mendoza's SAC. See Doc. No. 65. On December 15, 2016, the remaining defendants, USA and Malandris, respectively, joined in the motion. See Doc. Nos. 108, 111. Thus, all defendants in this case seek a summary judgment or partial summary judgment order finding that (1) there was no joint agency or dual employment of Malandris; (2) Nuttall and Peck cannot be liable for negligently and recklessly failing to properly investigate and document the subject collision; (3) there were no constitutional violations to support Mendoza's third, fourth, or fifth causes of action; (4) there is no constitutional right to a correct traffic collision report; (5) Peck did not violate any of Mendoza's constitutional rights when he interviewed Mendoza in the hospital, photographed his clothing and marijuana pipe, or obtained consent for a blood draw; and (6) no force or coercion was used against Mendoza during

the Peck hospital interview. <u>See</u> Doc. No. 65-16.[3] Accordingly, Defendant USA's motions [doc. no. 48, 65] are hereby consolidated and, for the following reasons, **GRANTED IN PART AND DENIED IN PART**.

> **A.   Summary Judgment or Partial Summary Judgment as to Whether Nuttall and Peck Can Be Liable For Negligently and Recklessly Failing to Properly Investigate and Document the Subject Collision**.

The first cause of action in the SAC (negligence) alleges, *inter alia*, that—

> . . . PECK and NUTTALL, as agents acting within the course and scope of their employment with the CITY OF NATIONAL CITY, and *having undertaken the task of investigating and documenting the aforementioned traffic collision, negligently and recklessly failed to properly investigate and document said traffic collision.*

Doc. No. 53 at 11 (italics added). Defendants take issue with the italicized part of this allegation. <u>See</u> Doc. No. 65-16 at 15-16. Here, the Defendants are not arguing that the distinction is either or—i.e. that the investigation was either *negligently* conducted (unintentional), or *recklessly* conducted (intentional), but not both. Instead, the argument here is that "[b]oth Nuttall and Peck *either* had no duty as alleged, *or* are immune under Cal. Govt. Code. Section 821.6[,] and so is the City." <u>Id</u>. at 18. Thus, the Defendants raise immunity as a defense to any allegations of negligence or recklessness, as either relates to the investigation, or contend that the duty Mendoza argues applied to Nuttall and Peck simply does not apply.

In opposition, Mendoza responds that there is no immunity for the negligent conduct alleged in the SAC, and contends that "Section 821.6 [of the Cal. Govt. Code] provides no blanket of immunity for the negligence demonstrate [sic] here." <u>See</u> Doc. No. 74 at 18.

---

[3] The Court notes that the National City Defendants duplicate the same arguments as those made in their previous motion for partial summary judgment partial summary judgment, as to the FAC, filed on May 9, 2016. <u>See</u> Doc. No. 48; <u>cf</u>. Doc. No. 65.

Thus, Mendoza's response is two-fold. First, that "an employee of a public entity is liable for his torts to the same extent as a private person and the public entity is vicariously liable for any injury which its employee causes. <u>Id</u>. (citing <u>C.A. v. William S. Hart Union High Sch. Dist.</u>, 53 Cal. 4th 861, 868 (2012). Second, that officers have "a duty 'to perform their official duties in a reasonable manner.'" <u>Id</u>. (quoting <u>Lugtu v. California Highway Patrol</u>, 26 Cal. 4th 703, 715 (2001) (internal citation omitted). Ultimately, Mendoza's argument is that the Defendants misconstrue the scope of government immunity relating to their conduct during the investigation.

In reply, the Defendants assert that Mendoza "clearly misreads defendants' 821.6 immunity argument[,]" and attempts to clarify why "section 821.6 immunity is construed broadly and immunizes Peck and Nuttall from the acts claimed by plaintiff, including the Bane Act claims." <u>See</u> Doc. No. 79 at 7-8. Specifically, the Defendants argue that they should prevail on this issue because Section 821.6 immunity is not limited to claims for malicious prosecution, but also extends to other causes of action arising from conduct protected by the statute, including defamation, IIED, and Cal. Civ. Code § 52.1. <u>Id</u>. at 8 (citing <u>County of Los Angeles</u>, 181 Cal.App.4th at 231). Thus, Defendants conclude, "the immunity covers all act[s] of negligence alleged by plaintiff against Peck and Nuttall." <u>Id</u>.

Drawing all inferences from the underlying facts in the light most favorable to Plaintiff, the Court finds no genuine issue of material fact with respect to whether the alleged negligence resulting from the actions of Nuttall and Peck, during the course of the investigation (e.g. Mendoza's claims that NCPD failed to document the correct speed limit, failed to properly photograph the scene, gather surveillance footage, or secure witnesses), fell within the scope of Section 821.6 government immunity. The Court finds that Defendants meet their initial burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 323. Specifically, Defendants make a showing sufficient to defeat Mendoza's contention that governmental

immunity does not shield Peck and Nuttall for the negligent conduct alleged in the SAC. Nuttall and Peck are immune.

The controlling case on this issue is <u>Strong v. State of California</u>, 201 Cal. App. 4th 1439 (2011), which interprets the scope of Cal. Govt. Code Section 821.6, as it relates to law enforcement personnel conducting investigations within the scope of their employment. In <u>Strong</u>, a highway patrol officer, while investigating a traffic collision, either lost or destroyed the identifying information of one of the parties to the accident. Swanberg was sued for negligence. The court found that there was no cause of action against the officer for such conduct, and even if there was, the officer was immune from such liability pursuant to Cal. Gov. Code section 821.6. With respect to duty, the court observed that, "[w]hen a CHP officer conducts an accident investigation, the intended beneficiary of that investigation is the prosecuting agency charged with the responsibility of instituting criminal cases, not private parties contemplating civil action." <u>Id</u>. at 1457. With respect to immunity, the court reaffirms that—

> Section 821.6 provides that '[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause. This immunity provision is to be construed broadly so as to further its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits.' . . . For purposes of this immunity provision, investigations are deemed to be part of judicial and administrative proceedings.

<u>Strong</u>, 201 Cal. App. 4th at 1461 (internal citations omitted). The Court of Appeal continues—

> The California Supreme Court has observed that although 'section 821.6 has primarily been applied to immunize prosecuting attorneys and other similar individuals, this section is not restricted to legally trained personnel but applies to all employees of a public entity.' Section 821.6 'applies to police officers as well as public prosecutors since both are public employees within the meaning of the Government Code.'

21

> The State maintains on appeal, as it did below, that since [the officer] lost or destroyed the second driver's identifying information during the course of an official CHP investigation, he is cloaked with the immunity of section 821.6. We agree. Since [the officer] is immune, so too is the State.

Strong, 201 Cal. App. 4th at 1461 (internal citations omitted). Here, there is no dispute that Peck and Nuttall were acting within the scope of their employment the night of the Mendoza traffic investigation. Nuttall was tasked with generating a traffic collision report, and, in furtherance of completing that report, Peck was sent to Scripps Mercy to interview Mendoza to later relay what he learned to Nuttall for the traffic collision report. Looking to the SAC, with respect to the first cause of action (negligence), and all the negligent allegations made therein as to "Defendants City of National City, Peck, Nuttall, and USA, [o]nly" [see doc. no. 53 at 10-11], Mendoza fails to provide authority demonstrating an exception to the cloak of government immunity as to Peck and Nuttall for negligence or recklessness.

In light of the foregoing, the Court finds that Defendants satisfied their initial burden. Celotex, 477 U.S. at 323. The Court finds that there is an absence of evidence on the record rebutting the Defendants' argument, and this Court's finding, that the governmental immunity statute applies to Nuttall and Peck, with respect to their roles in the Mendoza investigation, and Plaintiff's allegations that Nuttall and Peck negligently and recklessly failed to properly investigate and document the subject collision. As a matter of law, the motion for summary judgment filed by National City, Peck, and Nuttal, on this issue, is **GRANTED**.

Similarly, the Court finds an absence of evidence on the record rebutting Defendant USA's argument, and this Court's research in accordance, regarding the non-existence of a fundamental right to a correct traffic report, protected by the United States Constitution. Accordingly, Defendant USA's motion for judgment on the pleadings, with respect to this issue, is **GRANTED**.

**B.    Summary Judgment or Partial Summary Judgment as to Whether Any Constitutional Violations Exist to support Mendoza's Third, Fourth, or Fifth causes of action**

The third, fourth, and fifth causes of action in the SAC are allegations of violations of federal civil rights, 42 U.S.C. Section 1983 (against all defendants except USA), 42 U.S.C. Sections 1985(2) and (3) (against all defendants except USA), and 42 U.S.C. Section 1986 (against all defendants except USA).  See Doc. No. 53 at 12-15.  Thus, these allegations are aimed at Defendants National City, Nuttall, Peck, and Malandris.  The SAC specifically alleges that Mendoza's civil rights were violated in the following eleven ways—(1) making false and misleading statements to other law enforcement officers engaged in the investigation of the accident; (2) conspiring to prepare and file falsified accident investigation reports in an attempt to blame plaintiff for the accident; (3) unlawfully interrogating the plaintiff; (4) extracting plaintiff's blood without his consent; (5) unlawful search of plaintiff's person and belongings; (6) falsely reporting the speed limit in the accident report; (7) moving plaintiff after the accident; (8) moving Malandris' car after the accident; (9) failing to identify and secure witnesses to the accident; (10) failing to properly photograph the accident scene; and (11) failing to gather available video surveillance footage of the accident scene. Id. at 5-10, 12-15.

Thus, Defendants move for summary adjudication, arguing that the eleven alleged constitutional deprivations are logically directed at the individually sued officers, and that for individual officers to be found liable for deprivation of rights under Section 1983, Mendoza fails to show, and cannot show, that the individually named officers "committed an act that deprived the plaintiff of some right, privilege, or immunity protected by the Constitution of the United States." Id. at 19 (citing Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988)).

In opposition, Mendoza argues that summary judgment is not appropriate here because there are triable questions of material fact regarding violations of Mendoza's constitutional rights. See Doc. No. 74 at 21-26.

23

In reply, Defendants maintains that Mendoza's civil rights were not violated. See Doc. No. 79. Defendants argue that (1) regarding the blood draw, there are no admissible facts that Mendoza did not give valid consent; (2) even if Peck did somehow violate Mendoza's rights, with respect to the blood draw or interview about the pipe, Peck is still entitled to qualified immunity; (3) regarding the marijuana pipe, there are no facts indicating an unlawful search or violations of Miranda; (4) there is no constitutional right to a correct and error free accident report; and (5) Malandris' moving Mendoza out of the middle of the crosswalk to the side of the road did not violate his right to bodily integrity. See generally id.

Drawing all inferences from the underlying facts in the light most favorable to Plaintiff, the Court finds that Plaintiff presents sufficient evidence to show a genuine issue of material fact as to Peck's questions related to Plaintiff's marijuana use and Peck's consent obtained for a blood sample. Summary judgment, as to these issues, is, therefore, **DENIED**. However, Plaintiff has not met his burden of establishing a material issue of genuine fact as to allegations against Nuttall on these issues. Accordingly, summary judgment, as to Nuttall, is **GRANTED**.

Conversely, the Court finds no genuine issue of material fact with respect to whether the following conduct constitutes a violation of Plaintiff's civil rights: that Defendants (1) made false and misleading statements to other law enforcement officers investigating the accident; (2) conspired to prepare or file false investigation reports in an attempt to blame Plaintiff for the accident; (3) falsely reported the speed limit in the accident report; (4) moved Plaintiff after he was struck; (5) failed to conduct a proper investigation (including identifying and securing witnesses, failing to take photographs of the scene, and gathering surveillance or other video footage); and (6) searched Plaintiff's belongings at the hospital. The Court finds that Defendants met their initial burden by presenting evidence that negates an essential element of the nonmoving party's case, and by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See Celotex, 477

24

U.S. at 323. In Section (1)(B) *supra*, the Court **GRANTED** Defendants' motion for summary judgment, finding that (1) the governmental immunity statute applies to Nuttall and Peck, with respect to their roles in the Mendoza investigation, and to allegations that Nuttall and Peck negligently and recklessly failed to properly investigate and document the subject collision. Defendants' motion for summary judgment; and (2) the Ninth Circuit does not recognize the fundamental right to a correct traffic report. After due consideration, the Court **ADOPTS** the reasoning of Section (1)(B) *supra* and **GRANTS** Defendants' motion for summary judgment as to the same issues duplicated here.

With respect to the allegation that Peck searched and/or seized the marijuana pipe at the hospital, the Court finds that Plaintiff does not present sufficient evidence to rebut Peck's showing that the pipe was merely pointed out to him by a hospital attendant. See Doc. No. 65-10 at 2-6 (Peck Declaration, Narrative Supplemental). As such, there is no genuine issue of material fact that Peck's subsequent possession of the pipe was not a lawful seizure. Additionally, Plaintiff presents no evidence to show Peck did more than photograph Plaintiff's clothing presented to him. With respect to Nuttall, the Court also finds that Plaintiff has not met his burden to establish a genuine issue of material fact as to Defendant Nuttall on these issues. As a matter of law, Defendants' motion for summary judgment, on these issues, is **GRANTED**.

## C.  Summary Judgment or Partial Summary Judgment as to Mendoza's Bane Act claim Relating to the Hospital Interview.

The SAC alleges that all Defendants, except Malandris, interfered with rights protected by the California and U.S. Constitutions in violation of California Civil Code Sections 51, 52, and 52.1, the Bane Act.  See Doc. No. 53 at 11. California's Bane Act protects against a person who "*interferes by threat, intimidation, or coercion*, or [who] *attempts to interfere* by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . ." Cal. Civ. Code § 52.1 (emphasis added). The civil rights Mendoza alleges were interfered with were (1)

the right to be free from unreasonable search, seizure, and self-incrimination; and, via incorporation of previously pled allegations, (2) the right not to be discriminated against, by the government, on the basis of race. See Doc. No. 53 at ¶¶ 12-13, 21 ("[a] motivating reason for Defendants' conduct as set forth herein is the fact that Plaintiff is Hispanic.").

Defendants move for summary adjudication, arguing that "Peck interviewed the plaintiff at the hospital and under no interpretation of the facts could it be said that any force or coercion, in the violent sense, was used in any sense at all. [Similarly,] Nuttall simply investigated the accident and prepared a report." See Doc. 65-16 at 24. Thus, Defendants contend, Plaintiff's Bane Act cause of action should be dismissed as to all Defendants.

In opposition, Mendoza contends that granting Defendants' summary judgment motion as to this issue is improper because questions of fact exist as to whether Peck, Nuttall, and Malandris, violated Plaintiff's Constitutional right to due process, freedom from unreasonable search or seizures, freedom from self-incrimination, or attempted to do any of the same. See Doc. No. 74 at 26-31. Mendoza argues that there is no question that a Bane Act claim can be asserted directly against a public entity, or through *respondeat superior*; thus, if genuine issues of material fact exist as to whether National City's agents, Nuttall and Peck, violated Mendoza's civil rights, then a finding that this cause of action should be dismissed as to all Defendants is premature. Id. at 31.

In reply, Defendants maintain that a review of the facts in this case evidence that a Bane Act claim cannot be shown. See Doc. No. 79 at 6-7. Specifically, Defendant's argue that—

> Regardless of how the Bane Act is interpreted, this plaintiff was accidentally hit in a crosswalk by Malandris. He was then taken to a hospital and treated. He was interviewed by Peck, and voluntarily submitted to a blood draw. Nowhere in any scenario was this plaintiff subject to threats, intimidation or coercion by themselves, or with violence or threats of violence. Plaintiff was coerced to do nothing. He was not threatened in any fashion, with anything. He was not intimidated in any fashion. Certainly no

> violence or threat of violence was used against this plaintiff. He is not a proper Bane Act plaintiff and plaintiff's second cause of action must be dismissed against all National City defendants.

Id. at 6-7. Drawing all inferences from the underlying facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented a genuine issue of material fact as to whether Plaintiff's civil rights were violated via Peck's questioning concerning the use of the marijuana and Plaintiff's consent to the blood draw. Anderson, 477 U.S. at 248. Summary judgment, as to this issue as to Peck, is, therefore, **DENIED**, and the Court need not consider Plaintiff's evidence. Adickes, 398 U.S. at 159-60.

Conversely, the Court finds no genuine issue of material fact with respect to whether Nuttall violated the Bane Act. The Court finds that Defendants met their initial burden by presenting evidence that negates an essential element of the nonmoving party's case—namely, Nuttall's absence from the area where the interview with Mendoza occurred at the hospital. Defendant Nuttall's motion for summary judgment, on this issue, is **GRANTED**.

## CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**:

1. ECF Nos. 43 and 62, filed by Defendant USA, and subsequently joined in by Defendants National City, Nuttall, Peck, and Malandris are **GRANTED** in their entirety;

2. ECF Nos. 48 and 65, filed by Defendants National City, Peck, and Nuttall, and subsequently joined in by Defendants USA, and Malandris are **GRANTED IN PART AND DENIED IN PART**, as follows:

   a. The Court finds that Defendants satisfied their initial burden with respect to the issue of Malandris' employment status. The Court finds that (1) on the night of the incident, July 12, 2014, the USA was the sole employer of Malandris; and (2) *respondeat superior* liability, as to National City, can only arise from the conduct of its employees, Officers Nuttall and Peck, and not the conduct of Malandris.

27

Defendants' motion for summary judgment, on this issue, is **GRANTED**;

b.     The Court finds that there is an absence of evidence on the record rebutting the Defendants' argument, and this Court's finding, that the governmental immunity statute applies to Nuttall and Peck, with respect to their roles in the Mendoza investigation, and Plaintiff's allegations that Nuttall and Peck negligently and recklessly failed to properly investigate and document the subject collision. Defendants' motion for summary judgment, on this issue, is **GRANTED**;

c.     The Court finds an absence of evidence on the record rebutting Defendants' argument, and this Court's research in accordance, regarding the non-existence of a fundamental right to a correct traffic report, protected by the United States Constitution. Accordingly, Defendants' motion for judgment on the pleadings, with respect to this issue, is **GRANTED**;

d.     The Court finds that Plaintiff presents genuine issues of material fact with respect to questioning about drug use and Plaintiff's consent to the blood draw. <u>Anderson</u>, 477 U.S. at 248. Summary judgment, as to these issues, is, therefore, **DENIED**, and the Court need not consider Plaintiff's evidence. <u>Adickes</u>, 398 U.S. at 159-60.

**IT IS SO ORDERED**.

DATED: March 31, 2017

JOHN A. HOUSTON
United States District Judge

28